John G. Crist
Harlan B. Krogh
CRIST, KROGH, ALKE & NORD, PLLC
Securities Building
2708 First Ave. N., Suite 300
Billings, MT 59101
(406) 255-0400
jcrist@cristlaw.com
hkrogh@cristlaw.com

Daniel M. Jaffe
Frank J. Pergolizzi
Andrew B. Kolesar III
SLOVER & LOFTUS LLP
1224 Seventeenth St., N.W.
Washington, D.C. 20036
202.347.7170
dmj@sloverandloftus.com
fjp@sloverandloftus.com
abk@sloverandloftus.com

*Attorneys for Plaintiff Navajo Transitional Energy Company, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| NAVAJO TRANSITIONAL ENERGY COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | Case No. CV 22-146-BLG-SPW-KLD |

# PRELIMINARY PRETRIAL STATEMENT OF
# PLAINTIFF NAVAJO TRANSITIONAL ENERGY COMPANY, LLC

Pursuant to Local Rule 16.2(b)(1) and to this Court's Order dated December 20, 2022 (Doc. 3), Plaintiff Navajo Transitional Energy Company, LLC ("NTEC"), through its undersigned counsel, submits this Preliminary Pretrial Statement.

## A. Brief Factual Outline of the Case

Plaintiff NTEC mines thermal coal from its Spring Creek, Montana mine for sale to entities located in Korea and Japan. NTEC sells its export coal on a free-on-board-vessel basis[1] into ocean-going vessels loading at the Westshore Terminals facility at Roberts Bank, British Columbia. NTEC historically has shipped this export coal the 1,500-mile distance from Spring Creek to Westshore via Defendant BNSF Railway Company's ("BNSF") rail transportation service. BNSF is the only rail carrier capable of originating coal service at Spring Creek and providing continuous single-carrier rail transportation service from Spring Creek to Westshore. BNSF has provided coal transportation service for Spring Creek export coal for a number of years under a series of separate agreements.

On December 1, 2021, NTEC and BNSF entered into a Coal Transportation Agreement, denominated as "BNSF 90068-0099" (hereinafter the "2022

---

[1] FOB-vessel means that title to the coal will transfer to NTEC's customer when the coal is placed on board a vessel at Westshore for shipment to its destination in Asia.

Contract"). The 2022 Contract had a one-year term beginning on January 1, 2022 and ending on December, 31 of 2022. The 2022 Contract obligated NTEC to utilize BNSF for 100% of NTEC's required Westshore-bound coal transportation service under the 2022 Contract and was subject to a maximum annual volume of 5.5 million tons. That maximum volume equates to an average of approximately 30 trains per month. In addition, BNSF and NTEC had a separate agreement (BNSF-C-12828) that provided for the transportation of additional volume destined for a single customer in Japan (JERA) (hereinafter referred to as the "JERA Contract").[2]

During 2022, BNSF failed to transport a substantial portion of the coal that NTEC required under the 2022 Contract. In practice, BNSF's failed or refused to schedule and provide a sufficient number of trains (as well as required locomotives, railcars, and crews) to transport NTEC's Spring Creek coal under the 2022 Contract. Rather than provide NTEC's required transportation, BNSF instead used its existing resources (*i.e.*, its locomotives, railcars, and crews) to transport the export coal of other BNSF customers for delivery to Westshore.

BNSF breached its contractual obligations to transport NTEC's coal in two respects. First, BNSF failed to provide the full amount of NTEC's required, non-JERA coal transportation service. Second, BNSF breached its duty of good faith

---

[2] NTEC's action here does not include any claims under BNSF-C-12828.

and fair dealing under the 2022 Contract by allocating its available resources to transport export coal to Westshore in a manner that favored other coal export shippers at the expense of NTEC.

BNSF's failure to provide transportation service under the 2022 Contract damaged NTEC by preventing NTEC from fulfilling its coal-sales commitments to its own customers who required transportation service under the 2022 Contract. This failure caused direct monetary damages to NTEC in lost revenues and caused a loss of goodwill. BNSF's failure also caused NTEC to incur significant demurrage charges from the ocean-going vessels destined to non-JERA locations, which waited weeks longer than necessary to load due to BNSF failure to perform under the 2022 Contract.

**B.** **The Basis for Federal Jurisdiction and for Venue in the Division**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (diversity) because: Plaintiff NTEC is an incorporated entity organized by the Navajo Nation, with its corporate offices in Colorado; Defendant BNSF is a citizen of a different state; and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because: (i) the contract at issue in this proceeding pertains to the transportation of coal mined in this judicial district; (ii) BNSF resides, owns property, and provides rail

transportation in and through this judicial district; and (iii) BNSF is subject to personal jurisdiction in this judicial district. The Spring Creek Mine is located in Big Horn County, part of the Billings Division of this Court.

## C. <u>The Factual Basis of Each Claim or Defense Advanced by the Party</u>

- <u>Breach of 2022 Contract (Count I)</u>:

The parties' 2022 Contract explicitly states that NTEC "hereby accepts BNSF's offer to provide transportation pursuant to this Certificate for the movement described above . . . ." 2022 Contract at 3. The movement "described above" is the transportation of 100% of coal shipped from Spring Creek to the Westshore facility at Roberts Bank, BC in calendar year 2022 up to a maximum of 5.5 million tons of coal. 2022 Contract at 1.

The 2022 Contract is a valid and enforceable contract for the transportation of coal. BNSF agreed to provide railcars, equipment, and other facilities necessary to transport NTEC's export volumes under the 2022 Contract, subject only to the 5.5-million ton annual maximum.

While negotiating the 2022 Contract, NTEC advised BNSF that NTEC's anticipated volumes for the 2022 contract year would reach the 5.5-million ton maximum. At no time during the negotiations did BNSF ever suggest to NTEC that BNSF lacked the capacity (whether expressed in terms of railcars,

locomotives, track, crews, or any other metric) to transport those volumes under the 2022 Contract.

NTEC reasonably relied on BNSF's commitment to transport up to 5.5 million tons of export coal in 2022 under the 2022 Contract, and NTEC had a reasonable expectation that BNSF would provide all the equipment and resources necessary to transport NTEC's volumes. Based on BNSF's commitment to transport up to 5.5 million tons of export coal to Westshore under the 2022 Contract, NTEC entered into contractual commitments to supply export coal to customers in Asia.

BNSF's commitment to ship up to 5.5 million tons under the 2022 Contract is a separate and distinct obligation from BNSF's commitment under the JERA Contract to ship an additional, lesser volume of coal destined for JERA. The two contracts were negotiated separately, executed in different years (*i.e.*, 2021 for the 2022 Contract and 2018 for the JERA Contract), and had different lengths of term, different prices, and a host of different terms and conditions. Critically, NTEC's claims here do *not* include any claims under the JERA Contract.

Beginning in the early months of 2022, BNSF service began to fall behind the schedule necessary to move all of NTEC's intended export coal volumes under the 2022 Contract. To meet NTEC's total anticipated annual volume, BNSF should have transported an average of 30 trains per month to Westshore under the

2022 Contract. In 2022, however, BNSF transported only about half of the total volume of Spring Creek coal that NTEC sought to move under the 2022 Contract.

During April and May of 2022, NTEC sought assurances from BNSF that it would meet its transportation obligations under the 2022 Contract. At that time, BNSF personnel acknowledged the shortfall in requested transportation movements and estimated that BNSF service would not improve until the Fourth Quarter of 2022 at the earliest. BNSF then said it would transport a total of only 3.1 million tons of NTEC's coal during 2022 in total under both the 2022 Contract and JERA Contract.

In addition, BNSF personnel and senior executives asserted in communications with NTEC and its sole shareholder, the Navajo Nation, that BNSF believed it was not obligated to move any coal under the 2022 Agreement. *See*, *e.g.*, June 24, 2022 Letter of BNSF CEO Katie Farmer to the Honorable Jonathan Nez, President of the Navajo Nation, at 1 ("I understand that we may have different views on the nature of BNSF's service obligations under our contract, but the contract and our recent commercial history make clear that BNSF is not required to move any specific minimum volume of coal in 2022.").

NTEC incurred substantial damages because of BNSF's breach of the 2022 Contract.

- Breach of the Duty of Good Faith and Fair Dealing Under the 2022 Contract (Count II):

BNSF attempts to support its failures under the 2022 Contract by relying upon a provision in the  stating that BNSF has "sole discretion" in providing its transportation service.

Notwithstanding BNSF's failure to provide the full amount of coal transportation required by NTEC under the 2022 Contract, BNSF nevertheless substantially increased its volume of Westshore-bound export coal shipments for other customers relative to 2021 levels.

### D.     The Legal Theory Underlying Each Claim

NTEC has asserted claims for breach of contract and breach of the duty of good faith and fair dealing under the 2022 Contract.

A claim for breach of contract requires a contract, breach of an obligation under the contract, and damages as a result of the breach. *King v. Recreational Equip., Inc.*, CV 16-27-M-DLC, 2016 WL8711411, at *3 (D. Mont., Dec. 7, 2016). Damages for breach of contract serve to compensate an aggrieved party for the loss sustained. The nonbreaching party should receive a sum that will put it in as good a position as if the contract had been performed.

NTEC and BNSF were parties to a contract for the transportation of coal (Contract 90068-0099). BNSF failed to comply with its obligations under the 2022

Contract by failing to transport the coal that NTEC required for transportation up to a maximum of 5.5 million tons. BNSF breached this duty by failing to transport coal that NTEC offered under the 2022 Contract below the maximum tonnage limitation.

Each contract also includes an implied duty of good faith and fair dealing. *Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007); *Beaverhead Bar Supply v. Harrington*, 805 P.2d 560, 564 (Mont. 1991). BNSF also breached the 2022 Contract: (i) by failing to ensure that it had sufficient resources available to provide service for NTEC to Westshore; and (ii) by choosing to allocate its resources (whether in the form of trains, locomotives, railcars, or crews) to other BNSF customers, rather than NTEC, for transportation service of export coal to Westshore.

### E.  **Computation of Damages**

On the basis of the information presently available to it, NTEC will submit its calculation of damages in this case on the basis of the following:

(1)   the actual revenue (less avoided costs) that NTEC was deprived of under its existing coal sales agreements as a direct consequence of BNSF's failure to transport the full volume of coal required under the 2022 Contract;

(2)   the additional revenue (less avoided costs) that NTEC was deprived of under spot coal sales agreements that NTEC otherwise could have entered (at then-

prevailing prices) but for BNSF's failure to transport the full volume of coal required under the 2022 Contract;

(3) the additional demurrage costs that NTEC incurred as a direct consequence of BNSF's failure to deliver sufficient coal volumes to Westshore under the 2022 Contract in a manner that would have allowed the loading of ocean-going vessels (destined to non-JERA locations) within the required time limit for each vessel; and

(4) loss of customer goodwill for failure to ship contracted for coal volumes that was required to be transported under the 2022 Contract and for damage to NTEC's reputation as a reliable coal seller in a highly competitive export coal market.

NTEC's initial estimate of harm indicates that NTEC's total damages relating to BNSF's breaches of the 2022 Contract are at least $60 million. NTEC's estimate is subject to additional evaluation and discovery.

**F.    Pendency or Disposition of Related State or Federal Litigation**

No related state or federal litigation exists.

**G.    Proposed Additional Stipulations of Fact and
the Parties' Understanding as to What Law Applies**

NTEC proposed the following factual statements to BNSF for potential inclusion in a stipulation of facts:

1. BNSF and NTEC entered into Coal Unit Train Commitment Certificate BNSF 90068-0099 (a/k/a the "2022 Contract") in December 2021.

2. The 2022 Contract's term was January 1, 2022 through December 31, 2022.

3. The 2022 Contract was an executed agreement that incorporated the terms of BNSF's Common Carrier Pricing Authority, BNSF 90068, Revision 92.

4. The 2022 Contract identified Westshore Terminals at Roberts Bank, British Columbia, as the "Destination," and Spring Creek, Montana as the "Mine."

5. The Certificate/2022 Contract identified the "Minimum and Maximum Annual Volumes" as: "100% of coal shipped to WS at Roberts Bank, BC in calendar year 2022. NTEC shall provide, for planning purposes, non-binding estimates of tons to be tendered to BNSF for transportation (by month) for the ensuing quarter, no later than December 10, 2021, March 10, 2022, June 10, 2022 and September 10, 2022. The tons shall be reasonably prorated during the calendar year. The maximum annual volume is 5,500,000 short tons."

6. The 2022 Contract did not contain an arbitration clause.

7. The 2022 Contract does not include a choice-of-law provision.

8. The 2022 Contract was a stand-alone agreement that governed the origin-to-destination rail transportation of export coal movements from the Spring Creek Mine to Westshore Terminals, Roberts Bank, BC.

9. Each 2022 trainload of Spring Creek export coal moved pursuant to a Bill of Lading designating whether the 2022 Contract or Contract BNSF-C-12828 governed that movement.

In response, BNSF's counsel advised that they were unable to confer with their client upon receipt of NTEC's proposal due to client scheduling. The parties agree to discuss NTEC's proposed facts in more detail on or before March 23, 2023

In addition to the foregoing, Plaintiff NTEC is willing to stipulate to the following:

1. NTEC advised BNSF of its anticipated 2022 coal transportation needs under the then-proposed 2022 Contract on August 17, 2021.

2. Prior to the execution of the 2022 Contract, BNSF never suggested that it was "not required to move any specific minimum volume of coal [under the 2022 Contract] in 2022."

3. In 2022, BNSF did not transport NTEC's requested volume of coal shipments.

NTEC submits that Montana law applies. The 2022 Contract does not include a choice of law provision. Under Montana law, a contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of

the place where it is made.  *See* Montana Code Annotated § 28-3-102.  Coal transportation under the 2022 Contract was mined and loaded into BNSF trains at NTEC's Spring Creek Mine located in Montana.  From Spring Creek, Defendant moved each carload of coal to the Westshore Terminals at Roberts Bank, British Columbia, Canada.

H. **Proposed Deadlines for Joinder of Parties or Amendment of Pleadings**

Plaintiff proposes that the deadlines for joinder of parties and amendment of pleadings be those dates set forth in NTEC's portion of the parties' joint discovery plan.

I. **Identification of Controlling Issues of Law Suitable for Pretrial Disposition**

The construction or interpretation of a contract is a question of law.  *See, e.g.*, *AWIN Real Estate, LLC v. Whitehead Homes, Inc.*, 472 P.3d 165, 168 (Mont. 2020).  BNSF has taken the position that it was not required to move any specific minimum volume of coal under the Agreement in 2022.  The question of whether, as BNSF has claimed, BNSF had no minimum transportation obligation whatsoever under the parties' coal transportation agreement is a question that will be suitable for pretrial disposition.  Similarly, the question of whether, as NTEC contends, the 2022 Contract is a requirements contract that obligated BNSF to provide all of the export coal transportation service that NTEC required, with the

exception of export coal transported separately under the JERA Contract, will be suitable for pretrial disposition.

### J. The Name, City, and State of Individuals with Information that May be Used in Proving or Denying any Party's Claims or Defenses and Summary of that Information

1. Matthew D. Babcock, NTEC Vice President, Sales & Marketing, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Babcock may address NTEC's contract negotiation with BNSF, NTEC's sales of export coal, issues related to demurrage that NTEC incurred, and BNSF's performance under the NTEC agreements.

2. Jason Plett, NTEC Manager of Logistics, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Plett may address NTEC's administration of its contracts with BNSF, BNSF's performance under those contracts, issues related to demurrage that NTEC incurred, and NTEC's contract negotiations with BNSF.

3. Brian Reents, NTEC Director, Sales & Logistics, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Reents may address the administration of the BNSF agreements, BNSF's performance under those agreements, and NTEC's sales of export coal.

4. Vern Lund, NTEC Chief Executive Officer, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Lund may address BNSF's

performance under the NTEC agreements, contract negotiations with BNSF, and NTEC's sales of export coal.

5. Harry Tipton, NTEC Chief Growth Officer, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Tipton may address BNSF's performance under the NTEC agreements.

6. Rick Ziegler, NTEC Chief Operating Officer, Broomfield, CO, who may be contacted through Plaintiff's counsel. Mr. Ziegler may address BNSF's performance under the NTEC agreements.

7. Stevan Bobb, BNSF Chief Marketing Officer, Ft. Worth, TX. Mr. Bobb may address contract negotiations with NTEC (and possibly other export coal shippers) and BNSF's performance of Contract 90068-0099.

8. Katie Farmer, BNSF Chief Executive Officer, Ft. Worth, TX. Ms. Farmer may address BNSF's performance of Contract 90068-0099.

9. Farah Lawler, BNSF Vice President – Energy, Ft. Worth, TX. Ms. Lawler may address BNSF's contract performance and contract negotiations with NTEC.

10. Jessie McCabe, BNSF Director of Coal Marketing. Ms. McCabe may address BNSF's contract negotiations and contract performance with NTEC.

11. Todd Carter, Former BNSF Group Vice President, Industrial Products. Mr. Carter may address BNSF's contract negotiations and contract performance with NTEC.

12. Doug Jones, BNSF Assistant Vice President, Operations. Mr. Jones may address BNSF's contract performance.

13. Scott Myers, BNSF Director Operations. Mr. Myers may address BNSFs' contract performance.

**K. The Substance of Any Insurance Agreement that May Cover Any Resulting Judgment**

NTEC is unaware of the existence of any such insurance agreement.

**L. The Status of Any Settlement Discussions and Prospects for Compromise of the Case**

Since the filing of NTEC's Complaint, no settlement discussions have taken place, and Plaintiff believes that the prospects for compromise or settlement are not good at this time. Nevertheless, NTEC is willing to entertain reasonable proposals for the amicable resolution of this dispute.

**M. Suitability of Special Procedures**

Plaintiff does not believe that any special procedures are necessary or appropriate.

Respectfully submitted,

John G. Crist
Harlan B. Krogh
CRIST, KROGH, ALKE & NORD, PLLC
Attorneys at Law
Securities Building
2708 First Ave. N., Suite 300
Billings, MT 59101
(406) 255-0400
jcrist@cristlaw.com
hkrogh@cristlaw.com

By: /s/ Daniel M. Jaffe
Daniel M. Jaffe
Frank J. Pergolizzi
Andrew B. Kolesar III
SLOVER & LOFTUS LLP
1224 Seventeenth St., N.W.
Washington, D.C. 20036
202.347.7170
dmj@sloverandloftus.com
fjp@sloverandloftus.com
abk@sloverandloftus.com

*Attorneys for Plaintiff Navajo Transitional Energy Company, LLC*

Dated: March 16, 2023